United States District Court
Southern District of Texas
**ENTERED**
January 14, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **HELEN STONE,** | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | **CIVIL ACTION NO. 4:15-CV-2362** |
| | § | |
| **ACADEMY, LTD.,** *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Before the Court are the partial motion to dismiss filed by Defendant Academy, Ltd. d/b/a Academy Sports + Outdoors (Doc. No. 27) and the motion to dismiss filed by Defendant Pacesetter Personnel Services, Inc. (Doc. No. 29). These motions were filed on October 21, 2015, and October 22, 2015, respectively. Plaintiff Helen Stone filed responses on November 12, 2015. The deadline for filing replies has elapsed without any being filed. Therefore, the motions are ripe for adjudication. After careful consideration of the motions, responses, and applicable law, the Court finds that the motions should be denied.

### I.  BACKGROUND

The following facts are drawn from the first amended complaint. (Doc. No. 24.) For purposes of this motion, the complaint's well-pleaded factual allegations are accepted as true. *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974). From June 2013 to November 2013, Ms. Stone worked at Academy as a general laborer, primarily tasked with assembling boxes. (*Id.*, Ex. A at 1.) Pacesetter, an employment agency, hired her as a contract worker and paid her $8.00 to $8.50 per hour. (*Id.*) Ms. Stone and other Pacesetter contract workers were transported to Academy premises to perform their work. They were supervised by Academy employees. (*Id.* ¶ 10.)

From time to time, Pacesetter contract workers would be promoted to full-time, direct employees of Academy. With this promotion came higher wages. (*Id.*) Promotions were based in part on contract workers' productivity in assembling boxes. "Plaintiff was a productive and competent employee at all relevant times and was one of the highest-producing box assemblers at the job site." (*Id.* ¶ 11.) When workers were assigned to crush boxes in a different room than the box-assembly area, their productivity in performing this task was not measured, recorded, or used in promotion decisions. Likewise, time spent training new employees did not factor into promotion decisions. Ms. Stone was assigned to crush boxes and train new employees more often than other employees, and this decreased her critical box-assembling metric.

During her employment, Ms. Stone, who is African-American, was not promoted, nor were other African-American contract workers. Rather, "almost exclusively Hispanic employees" were promoted. (*Id.* ¶ 12.) In addition, Ms. Stone's supervisors were Hispanic, and these supervisors assigned only African-American contract workers to crush boxes.

On November 13, 2013, Ms. Stone was told to go crush boxes. (*Id.* ¶ 14.) She complained about only African-Americans being assigned this duty. The next day, she was terminated "under the false pretext that she was a low-productivity employee." (*Id.*)

On May 12, 2014, Ms. Stone completed a U.S. Equal Employment Opportunity Commission ("EEOC") Intake Questionnaire. (Doc. No. 33, Ex. A.) The EEOC received it that same day. (*Id.* at 1.) On November 12, 2014, Ms. Stone completed a formal Charge of Discrimination. (*Id.*, Ex. B. at 2.) The Charge alleges that the latest date that discrimination took place was November 14, 2013. (*Id.*) On May 8, 2015, the EEOC issued a right-to-sue letter, explaining that the EEOC was closing its file because, "[b]ased upon its investigation, the EEOC

is unable to conclude that the information obtained establishes violations of the statutes." (Doc. No. 24, Ex. A at 2.)

## II. LEGAL STANDARDS

Plaintiffs asserting Title VII employment discrimination claims "must exhaust their administrative remedies before seeking judicial relief." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008). "The first step down this path is filing a timely charge of discrimination with the EEOC." *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). Title VII mandates that a charge of discrimination "shall contain such information and be in such form as the Commission requires." 42 U.S.C.A. § 2000e-5 (West 2009). EEOC regulations provide that "a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b) (2009). A claim has been exhausted when it falls within "the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). Courts construe the scope of an EEOC charge liberally because most filers are pro se. *Id.* at 788.

A court may dismiss an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, a complaint "must contain

3

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Gonzalez v. Kay*, 577 F.3d 600, 605 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft*, 556 U.S. at 678). "On a Rule 12(b)(6) motion, a district court generally 'must limit itself to the contents of the pleadings, including attachments thereto.'" *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). However, "[t]he court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Id.*

### III. ANALYSIS

Pacesetter contends that all claims against it should be dismissed. Pacesetter's argument is threefold. First, Pacesetter contends that Ms. Stone did not exhaust her claims because her November 2014 formal Charge of Discrimination did not identify Pacesetter. Second, Pacesetter says that Ms. Stone's May 2014 Intake Questionnaire attached to and incorporated by reference into the complaint is insufficient because it does not function as a charge of discrimination. Third, Pacesetter argues that, even if the formal Charge is construed as including her claims against Pacesetter, her claims are time-barred. Ms. Stone's Charge was filed 363 days after the last alleged discriminatory act on November 14, 2013, but a charge must be filed within 300 days of the last discriminatory act.

Both Pacesetter and Academy seek dismissal of Ms. Stone's disparate impact and systemic discrimination claims. They contend that she failed to exhaust her administrative remedies on these claims because her formal Charge does not mention them. Alternatively,

4

Academy maintains that Ms. Stone's complaint does not state a claim for disparate impact or systemic discrimination.[1]

### A. Intake Questionnaire As a Charge

Pacesetter and Ms. Stone dispute whether Ms. Stone's Intake Questionnaire qualifies as a charge. For the reasons below, the Court finds that it does.

The Fifth Circuit has "recognized that an intake questionnaire that informs the EEOC of the identity of the parties and describes the alleged discriminatory conduct in enough detail to enable the EEOC to issue an official notice of charge to the respondent is sufficient to 'set the administrative machinery in motion.'" *Conner v. La. Dep't of Health & Hosps.*, 247 F. App'x 480, 481 (5th Cir. 2007) (unpublished) (quoting *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir.1982)). Ms. Stone's intake questionnaire meets this standard. She clearly identified Academy and Pacesetter in the section soliciting information about the organization that allegedly discriminated against the filer. (Doc. No. 33, Ex. A at 1). She provided both organizations' names and contact information. She also explained the alleged discrimination in detail:

> After consistent high performance I was not promoted to regular status like Hispanic females with lesser production. My high production would be impeded by various acts and assignments by Hispanic line leads and supervisors. I would be assigned heavy labor which was not age or health appropriate, unlike Hispanic co-workers. I was terminated after vocalizing my observation of discrimination.

(*Id.* at 2.)

In addition, the Intake Questionnaire itself "indicate[s] that it could be a charge." *Wilkerson*, 270 F.3d at 1320. At the bottom of the last page, the form says that it "may serve as a charge if it meets the elements of a charge." (Doc. No. 33, Ex. A at 4.) This notice refers readers

---

[1] Although Pacesetter's motion includes this argument in its "Statement of the Issues Presented" and "Summary of the Argument," it is not mentioned in the "Arguments and Authorities" section.

5

to 29 CFR 1601.12(b), which provides that "a charge is sufficient when the [EEOC] receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." In *Federal Express Corp. v. Holowecki*, the Supreme Court found that the intake questionnaire there indicated that it was not a charge by explaining the form's purpose as "to facilitate 'pre-charge filing counseling' and to enable the agency to determine whether it has jurisdiction over 'potential charges.'" 552 U.S. 389, 405 (2008). By contrast, the Intake Questionnaire here expressly states that it may be considered a charge. The top of the form warns that "a charge of employment discrimination must be filed within the time limits imposed by law," (Doc. No. 33, Ex. A at 1); however, "[e]ven a careful reader could interpret this charge deadline to refer to the filing of the questionnaire." *Wilkerson*, 270 F.3d at 1320.

Two facts distinguish Ms. Stone's case from *Conner* and *Price*, where the Fifth Circuit found that the intake questionnaires could be charges. First, in both cases, the EEOC itself treated the questionnaire as a charge. *Conner*, 247 F. App'x at 481 (explaining that the EEOC issued a notice of charge after receiving a completed intake questionnaire); *Price*, 687 F.2d at 76, 78 (same). Second, the employers in those cases received notice of the charge. *Conner*, 247 F. App'x at 481; *Price*, 687 F.2d at 76. Here, the EEOC issued its notice of charge on the same day that Ms. Stone completed her formal Charge and appears to have sent notice only to Academy.

In *Evenson v. Sprint/United Mgmt. Co.*, No. 3:08-CV-0759-D, 2008 WL 4107524, at *5 (N.D. Tex. Aug. 21, 2008), the district court found these same factual distinctions to be meaningful, which led to its finding that the employee had not exhausted her administrative remedies. *Evenson* relied on an unpublished Fifth Circuit case which "construes *Price* as requiring notice to the employer and EEOC administrative action before an intake questionnaire

6

suffices as a formal charge." *Evenson*, 2008 WL 4107524, at *5 (citing *Harris v. David McDavid Honda*, 213 F. App'x 258, 262 (5th Cir. 2006)). However, *Harris* was decided before *Holowecki*, and in *Holowecki*, the Supreme Court rejected the employer's argument that the EEOC's failure to act on the employee's filings meant that those filings did not constitute a charge. The Court explained that "[i]t would be illogical and impractical to make the definition of charge dependent upon a condition subsequent over which the parties have no control." *Holowecki*, 552 U.S. at 404. That reasoning applies with equal force to this case. *Cf. E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 482 (5th Cir. 2014), as revised (Sept. 18, 2014) (relying on *Holowecki* to find that "it would be inappropriate . . . to look to a post-charge notice to determine whether a party was named" in a charge).

Moreover, the employer in *Holowecki* "was not notified of [the employee's] complaint until she filed suit." 552 U.S. at 407. In addition, the EEOC "failed to treat [the employee's] filing as a charge in the first instance." *Id.* Yet the Supreme Court held that the filing was a charge. As a result, to the extent *Conner* and *Price* can be read as requiring EEOC treatment of the employee's filings as a charge and notice to the employer, those decisions have been overruled by *Holowecki*.[2] Following *Holowecki*, this Court finds that neither the EEOC's decision not to treat Ms. Stone's Intake Questionnaire as a charge nor the alleged lack of notice to Pacesetter render her claims unexhausted.

---

[2] The Court in *Holowecki* cautioned that employees and their counsel should carefully evaluate whether its opinion, based on the Age Discrimination in Employment Act ("ADEA"), could be applied to other statutes, such as Title VII, that the EEOC enforces. 552 U.S. at 393. In *Evenson*, the district court thoroughly explained why *Holowecki* should apply in Title VII cases based on the similarity between the statutory schemes and Fifth Circuit case law treating parallel provisions in the ADEA and Title VII interchangeably. 2008 WL 4107524, at *6. This Court finds that discussion persuasive and agrees with the conclusion.

In addition to the information being sufficient to issue a notice of charge, *Holowecki* requires that the filing can be reasonably construed as a request for agency action. *Holowecki*, 552 U.S. at 402. Ms. Stone discharged this obligation by checking Box 2 at the end of the Intake Questionnaire. The form requests that the employee check one of two boxes. Box 1 says "I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time." (Doc. No. 33, Ex. A at 4.) Box 2 says

> I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

(*Id.*) Employees who check Box 1 are notified that they have not filed a charge. Because Box 2 lacks a similar warning, those who check it could reasonably think that they have filed a charge. Moreover, checking Box 2 authorizes the EEOC to investigate the alleged discrimination. Therefore, Ms. Stone requested agency action by checking Box 2.

Accordingly, the Court finds that Ms. Stone's Intake Questionnaire constitutes a charge. This conclusion is consistent with the Supreme Court's directive that "[d]ocuments filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies." *Holowecki*, 552 U.S. at 406.

### B. Exhaustion of Disparate Impact and Systemic Discrimination Claims

Having decided that Ms. Stone's Intake Questionnaire qualifies as a charge, the Court must consider the information on this form when deciding whether she exhausted her disparate impact and systemic discrimination claims. Without the benefit of this decision, Pacesetter's and

Academy's arguments focus exclusively on the formal Charge of Discrimination. They contend that this document fails to identify a facially neutral employment policy, which is a necessary element for these claims. They further maintain that her formal Charge does not assert class-like allegations on behalf of similarly situated individuals. Ms. Stone responds that her Intake Questionnaire names two neutral policies: (1) requiring employees to sometimes perform heavier work upstairs and (2) only counting box-assembly productivity for promotions. Ms. Stone adds that her formal Charge supports these claims by alleging that she told her supervisor "that it was not fair that management only sent African-American employees upstairs to do the heavy work." (Doc. No. 34 at 4.)

The Court agrees with Ms. Stone. Her Intake Questionnaire alleges that she was discriminated against by being assigned heavy labor. (Doc. No. 33, Ex. A at 2.) Ms. Stone explained that this assignment "interfered with [her] high production and promo[tion]." (*Id.*) When asked to name other employees who received the same treatment and to describe that treatment, she listed five other African-American employees as being sent "to backroom with lower production." (*Id* at 3.) From these allegations, one would expect that the EEOC investigation would cover how an employee's productivity related to promotion. As a result, the policies of using only box-assembly production numbers in promotion decisions but assigning some employees to perform other tasks could "reasonably be expected to grow out of the charge of discrimination." *Pacheco*, 448 F.3d at 789 (quoting *Sanchez*, 431 F.2d at 466).

### C. Failure to State A Claim for Disparate Impact or Systemic Discrimination

Academy's final argument is that Ms. Stone's complaint fails to state a claim for disparate impact or systemic discrimination. Academy submits that the alleged employment

9

practices are too vague and not facially neutral. Ms. Stone counters with quotations from her complaint.

The Court finds that Ms. Stone's complaint adequately pleads these claims. Her complaint alleges that the quantity of boxes each worker assembled was "used in part to determine which workers would be promoted to full-time 'regular' workers.'" (Doc. No. 25 ¶ 11.) The complaint further alleges that "supervisors would only assign African-American employees to box-crushing duty in a different room, because unlike box-assembling, where productivity levels were measured and recorded, the productivity levels in box-crushing tasks were not recorded." (*Id.* ¶ 12.) The policy of counting only box-assembly productivity is a specific, facially neutral policy.

## IV. CONCLUSION

For the foregoing reasons, Academy's partial motion to dismiss and Pacesetter's motion to dismiss are **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 12th day of January, 2016.

THE HONORABLE KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE